## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **CASE NO. 2:21-CR-186(1)** |
| **Plaintiff,** | **JUDGE EDMUND A. SARGUS, JR.** |
| **vs.** | |
| **ZAIRE D. JONES,** | |
| **Defendant.** | |

### GOVERNMENT'S SENTENCING MEMORANDUM

The United States submits this Sentencing Memorandum in connection with Zaire D. Jones's upcoming sentencing hearing. The Government agrees with the factual findings and guideline calculations from the Presentence Investigation Report, which yields a sentencing range of 37–46 months of imprisonment. The Government respectfully requests that the Court accept the parties' binding plea agreement, however, and impose a **30-month term of imprisonment**.

### I. BACKGROUND

On October 19, 2021, the Grand Jury returned a three-count Indictment against Rebecca Allard and Zaire Jones. PSR, ECF No. 69, ¶ 1. Count 2 charged Jones with aiding and abetting the straw purchase of a firearm. *Id.* at ¶ 2. Count 3 charged Jones with receipt of a firearm while under felony indictment. *Id.* at ¶ 3. On April 17, 2023, Jones pled guilty to Counts 2-3 pursuant to a plea agreement under Federal Rule of Criminal Procedure 11(c)(1)(C). *Id.* at ¶ 6.

Jones's guilty plea stemmed from Rebecca Allard's September 2021 straw purchase of a Draco 7.62 assault pistol from Vance Outdoors, a local firearms dealer. *Id.* at ¶¶ 12–13. Allard, who knew Jones from working at a convenience store in the Mount Vernon neighborhood, agreed to purchase the firearm for him because he was prohibited from doing so given his pending felony indictment. *Id.* at ¶ 13. Jones accompanied Allard to Vance's and selected the gun he wanted. *Id.* Allard then completed the required paperwork, and, in the process, she lied to Vance's and the ATF regarding the identity of the "actual transferee/buyer" of the firear. *Id.* at ¶ 14. By claiming that she was the "actual transferee/buyer" (rather than Jones), Allard circumvented the background check that would have prohibited Jones from purchasing the gun himself. *Id.* at ¶¶ 12–14. Although Allard knew that Jones was the "actual transferee/buyer" of the firearm, she listed herself instead, and she paid for the gun with roughly $1,000 in cash that Jones had provided. *Id.* at ¶ 13.

After making the straw purchase, Allard and Jones left Vance's together. *Id.* at ¶ 15. Allard then transferred the gun to Jones, who paid her several hundred dollars for making the straw purchase on his behalf. *Id.* Later that day, Jones used the firearm in a shooting just blocks from the convenience store where he first met Allard. *Id.* at ¶ 16. Fortunately, nobody was injured. *Id.* Police officers recovered the firearm roughly two weeks later at a residence occupied by the mother of Jones's children, where he had stored it for safekeeping. *Id.* at ¶ 18. In short, Jones aided and abetted Allard in the straw purchase of a firearm and unlawfully took receipt of that firearm while under felony indictment. *Id.* at ¶ 19.

2

After Jones was indicted, the parties entered into a binding plea agreement. *Id.* at ¶ 6. In that agreement, the parties agreed that an appropriate sentence would be a term of 30 months of imprisonment, to run concurrently to any undischarged terms of imprisonment imposed in five different cases in the Franklin County Court of Common Pleas and a $200 fine. *Id.* at ¶ 7. The parties left all other aspects of the sentence, including any fine and term of supervised release, up to the Court's discretion. *Id.*

On June 29, 2023, the Probation Officer released Haley's Final PSR. The Probation Officer calculated a Total Offense Level of 17 and a Criminal History Category of IV, which yields a sentencing range of 37–46 months. *Id.* at ¶ 82. Neither party has lodged any objections to the guideline calculations contained in Jones's PSR. *Id.* at Addendum.

## II. LEGAL STANDARDS

After *Booker v. United States*, 543 U.S. 220 (2005), district courts must engage in a three-step sentencing procedure. Courts must first determine the applicable guidelines range, then consider whether a departure from that range is appropriate, and finally, consider the applicable guidelines range—along with all the factors listed in 18 U.S.C. § 3553(a)—to determine what sentence to impose. The central command in imposing a sentence is to fashion one that is sufficient, but not greater than necessary, to meet the goals set forth in § 3553(a).

### III.  ANALYSIS

### A.  The Applicable Guidelines Range

The Probation Officer calculated a Total Offense Level of 17 and a Criminal History Category of IV, resulting in a guidelines range of 37–46 months of imprisonment.  PSR, ¶ 82.  Neither party has objected to those calculations, so the Court should adopt them at the time of sentencing.

### B.  Possible Departures from the Applicable Guidelines Range

The Probation Officer did not identify any factors that would warrant a departure from the applicable guidelines range.  *Id.* at ¶ 99.  The Government agrees.

### C.  Consideration of the Sentencing Factors from 18 U.S.C. § 3553(a)

Finally, the Court must consider the applicable guidelines range alongside the sentencing factors outlined in 18 U.S.C. § 3553(a) to fashion a sentence that is sufficient, but not greater than necessary, to meet Congress's sentencing goals. The Government submits that a (slightly) below-guidelines sentence will suffice.

### 1.  The Nature and Circumstances of the Offenses

The nature and circumstances of the offenses are troubling.  Allard and Jones worked together to circumvent federal firearm laws by conducting the straw purchase of a firearm.  Jones, for his part, put Allard up to the straw purchase and paid her for doing so.  Jones, moreover, took receipt of that firearm and used it in a shooting, despite being under a felony indictment at the time.  Fortunately, no one was injured in the shooting.  Any sentence must reflect the serious nature and circumstances of these offenses, and a 30-month sentence will do just that.

## 2.  The History and Characteristics of the Defendant

Jones's history and characteristics point to the same result.  Despite being just twenty-one years old, Jones has amassed eight criminal history points from a variety of criminal activity, including a juvenile adjudication for receipt of stolen property (age seventeen) and adult convictions for improper handling of a firearm (eighteen); domestic violence (nineteen); involuntary manslaughter with a firearm specification, improper discharge of a firearm, and having a weapon under disability (nineteen); and improper discharge of a firearm and felonious assault (nineteen).  Given Jones's prior convictions and sentences, he will not be eligible for release from ODRC custody until September 7, 2046—when he will be forty-four years old.  In other words, Jones will have spent over half of his life in prison by the time he is eligible for release.

Jones's young life has been marked by violence and gunfire.  He grew up in a broken household in the Short North area and admits to being associated with the Short North Posse.  In addition to his many convictions for discharging firearms, felonious assault, and manslaughter, he has been hospitalized three times for his own gunshot wounds.  Early and often substance and alcohol abuse appear to be contributing factors to his penchant for violence—both as attacker and victim.  Jones, who was on an IEP in middle school, barely attended high school and did not graduate.  He has not obtained his GED, and his documented behavioral issues go back to kindergarten.  He has never held a job.  His mother died in 2019, and he has no contact with his father, who is still alive.  Jones has one child, age three, from a previous relationship.

By nearly any measure, Jones was dealt a bad hand in life which he made decidedly worse through his own choices and associations, his lack of education or a job, and his dedication to firearm use and extreme violence.  Given his history and characteristics, the Government would ordinarily request a within-guidelines sentence or a sentence above the advisory guidelines range.  However, the Government is mindful that Jones already faces a combined twenty-five year sentence (at least) in ODRC custody, which is why the Government is comfortable requesting a slightly below-guidelines sentence in this case.

### 3.  The Need to Reflect the Seriousness of the Offense, Promote Respect for the Law, Provide Just Punishment, and Afford Adequate Deterrence

The Court must impose a sentence that reflects the seriousness of the offense, promotes respect for the law, provides just punishment, and affords adequate deterrence.  18 U.S.C. § 3553(a)(2)(A)-(B).  The Government submits that a 30-month term of imprisonment would best promote these goals, particularly in light of the very stiff sentence he is already serving.

### 4.  The Need to Protect the Public

The Court must also consider the need for the sentence imposed "to protect the public from further crimes of the defendant."  *Id.* § 3553(a)(2)(C).  Here again, the Government recognizes the paramount goal of protecting the public from Jones, who has a documented history of violence.  Yet here again, the Government also recognizes that Jones is already serving an incredibly stiff sentence of twenty-five years (at least) in state custody.  That sentence, and the fact that Jones will be in his mid-forties before he is even eligible for release, will adequately protect the public.

6

### 5. The Kinds of Sentences Available

Because Jones's guideline range falls in Zone D of the Sentencing Table, "the minimum term shall be satisfied by a sentence of imprisonment." U.S.S.G. § 5C1.1(f).

### 6. The Need to Avoid Unwarranted Sentencing Disparities

Finally, the Court must craft a sentence that accounts for "the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). The Government submits that a sentence just below the low-end of the advisory guidelines will still satisfy this goal of sentencing given Jones's lengthy undischarged terms of imprisonment in state custody.

## IV. CONCLUSION

For these reasons, the United States respectfully requests that the Court sentence Zaire Jones to 30 months of imprisonment, to be followed by whatever period of supervised release the Court deems appropriate, in addition to a $200 mandatory special assessment.

Respectfully Submitted,

KENNETH L. PARKER
United States Attorney

s/Noah R. Litton
NOAH R. LITTON (0090479)
Assistant United States Attorney
303 Marconi Boulevard, Suite 200
Columbus, Ohio 43215
Phone: (614) 469-5715
Email: Noah.Litton@usdoj.gov

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that the foregoing Sentencing Memorandum was served electronically on all counsel of record on this 7th day of July, 2023.

s/Noah R. Litton
NOAH R. LITTON (0090479)
Assistant United States Attorney
